FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2017 JAN 17 PM 4: 36

Case No.: 6:17-CV-76-ORL-22 KRS

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts Corporation

        Plaintiff,

v.

AIR IDEAL, INC., a dissolved Florida
Corporation; MITCHELL S. AMKRAUT,
individually; and KIM C. AMKRAUT,
individually;

        Defendants.

_____/

## COMPLAINT

Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY, through its counsel, hereby

sues Defendants, AIR IDEAL, INC., MITCHELL S. AMKRAUT, and KIM C. AMKRAUT, and

alleges:

### PARTIES, JURISDICTION, AND VENUE

1.    This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a)

because Plaintiff and Defendants are citizens of diverse states.

2.    LIBERTY MUTUAL INSURANCE COMPANY ("Liberty") is a Massachusetts

corporation incorporated in Massachusetts with its principal place of business in Boston,

Massachusetts making it a citizen of Massachusetts in accordance with 28 U.S.C. § 1332(c)(1).

Liberty is licensed to conduct business in Florida.



3.      Upon information and belief, AIR IDEAL, INC. ("Air Ideal") is a dissolved corporation incorporated in Florida with is principal place of business in Winter Park, Florida, in Orange County making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1).

4.      Upon information and belief, Defendant MITCHELL S. AMKRAUT ("Mr. Amkraut") is a resident of Winter Springs, Florida, in Seminole County making him a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

5.      Upon information and belief, Defendant KIM C. AMKRAUT ("Mrs. Amkraut") is a resident of Winter Springs, Florida, in Seminole County making her a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

6.      The causes of action alleged herein fall within the jurisdictional limits of the Court because Liberty seeks to recover more than $75,000.00 from the Defendants.

7.      Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Middle District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Orlando Division of this Court.

## GENERAL ALLEGATIONS

8.      As part of its business, Liberty issues payment and performance bonds and stands as surety for selected contractors.

9.      In connection with its work, Air Ideal from time to time required surety payment and performance bonds.

10.     To induce Liberty to issue payment and performance bonds on its behalf, Air Ideal, Mr. Amkraut, and Mrs. Amkraut entered into an indemnity agreement with Liberty.

11.     Specifically, on October 15, 2013, Air Ideal, Mitchell S. Amkraut, and Kim C. Amkraut (collectively, the "Indemnitors") each executed a General Agreement of Indemnity ("Agreement") in favor of Liberty, its affiliates, and its agents.  A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit "A."**

12.     The execution of the Agreement, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Liberty issuing any bonds naming Air Ideal as a principal.

13.     According to the Agreement, the Indemnitors agreed, in part, to:

> … exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement or a breach of any other written agreements between or for the benefit of the Surety and the Indemnitor(s) and/or Principal(s) (hereinafter referred to as "Other Agreements"), court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements….

> [Exhibit A, p. 1, Second].

14.     The Agreement also provides that:

> …Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors and/or Principals promptly, upon demand by the Surety, whether or not the Surety shall have made any payment therefor and, at the Surety's sole option, irrespective of any deposit of collateral. If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be

obliged to indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims therefor. At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously provided to the Surety. The Surety shall have the right to use any collateral, or any part thereof, in payment or settlement of any such liabilities for which the Indemnitors and Principals would be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements. In the event of any payment by the surety, the Indemnitors and Principals further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement or Other Agreements under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety....

[Exhibit A, p. 1, Second].

15.   Additionally, the Agreement provides that:

In the event of any of the following: breach, default, or termination asserted by the obligee in any Bond; any Principal's abandonment of the work or forfeiture of any contract covered by any Bond, any Principal's failure to pay obligations incurred in connection therewith... then the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by the Bonds, and the Indemnitors hereby agree to use their best efforts to cause the Principal to permit the Surety to take possession of any part or all of the work under any contract or contracts covered by the Bonds, at the expense of the Indemnitors and Principals, to complete or arrange for the completion of the same, and the

4

Indemnitors and Principals shall promptly, upon demand, pay to the Surety all losses, fees, costs and expenses so incurred.

[Exhibit A, p. 2, Fifth].

16.   Finally, the Agreement provides that:

The Surety shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bond, unless any Indemnitor or Principal, providing a reasonable legal basis therefor, shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

[Exhibit A, pp. 2-3, Thirteenth].

17.   The Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep Liberty indemnified "from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest…, court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which [Liberty] may sustain or incur" as a result of executing the payment and performance bonds or because of Air Ideal's, or the Indemnitors', failure to comply with the Agreement.

18.   Liberty agreed to issue payment and performance bonds naming Air Ideal as principal at the Indemnitors' request in consideration for their promise to comply with the terms of the Agreement.

19.   Liberty issued payment and performance bonds naming Air Ideal as principal (the "Bonds") on a project located in Enid, Oklahoma (the "Project").

20.     Liberty has received numerous claims against the Bonds from various entities, including: (a) obligees making performance bond claims based on Air Ideal's allegedly defective or incomplete work on the Project and/or Air Ideal's abandonment of the Project; and (b) several subcontractors, material suppliers, and/or rental equipment providers making payment bond claims for the labor, services, materials, or equipment they claim to have performed or furnished on the Project at Air Ideal's request, but for which Air Ideal has not paid.  The individuals or entities referenced in subparts (a) and (b) are collectively referred to herein as "Claimants."

21.     As a result of Air Ideal's failure or refusal to fulfill its performance or payment obligations on the Project, Claimants also filed suits naming Liberty as Defendant (the "Air Ideal Lawsuits").

22.     Since Air Ideal refused or was unable to resolve the Claimants' claims and the Air Ideal Lawsuits, Liberty was forced to hire consultants and attorneys to respond to, investigate, defend against, and sometimes resolve the various claims.

23.     Liberty has incurred losses as a result of issuing the Bonds, which losses include the costs to defend itself in the Air Ideal Lawsuits and the cost to resolve Claimants' claims.

24.     As of the date of filing this Complaint, Liberty has been forced to pay or satisfy various Claimants' claims and Air Ideal Lawsuits (the "Claims and Lawsuits Paid").

25.     In addition to the Claims and Lawsuits Paid, Liberty has paid attorneys' fees and consultants' fees to investigate, defend, and/or satisfy the Claimants' claims and Air Ideal Lawsuits.

26.     Before filing this action, Liberty demanded, orally and in writing, that the Indemnitors indemnify it for all amounts it has incurred to satisfy the Claimants' claims and Air Ideal Lawsuits, and for the attorneys' fees and costs Liberty has incurred as a result of

investigating, litigating, and defending the Claimants' claims and Air Ideal Lawsuits. Liberty has also demanded collateral security to protect itself against future losses.

27.     Despite Liberty's demands, the Indemnitors have failed and refused to comply with Liberty's request for indemnification for the losses Liberty has suffered as a result of issuing the Bonds.

28.     In addition, the Indemnitors did not post any collateral security with Liberty despite its demand for collateral security.

29.     The Indemnitors have not reimbursed Liberty for the Claims and Lawsuits Paid or the attorneys' fees, consultants' fees, and other costs and expenses Liberty has incurred as a result of issuing the Bonds.

30.     Liberty has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

31.     Liberty has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Agreement or has been excused from doing so by Indemnitors.

32.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
### (Breach of Contract / Contractual Indemnity against the Indemnitors)

33.     Liberty realleges and incorporates the allegations in paragraphs 1 through 32 as if fully set forth herein.

34.     Pursuant to the Agreement, the Indemnitors promised to "exonerate, hold harmless, indemnify, and keep indemnified [Liberty] from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre-

and post-judgment interest..., court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which [Liberty] may sustain or incur" by reason of, among other things, having executed the Bonds or enforcing the Agreement.

35.     Pursuant to the Agreement, the Indemnitors also agreed to "deposit with [Liberty], promptly upon demand, a sum of money equal to an amount determined by [Liberty] or collateral security of a type and value satisfactory to [Liberty]" to cover Liberty's liability.

36.     The Indemnitors have committed various breaches and defaults of the Agreement, including but not limited to:

      a.     failing and refusing to pay the Claimants' claims;

      b.     failing and refusing to collateralize Liberty against future loss or liability with regard to claims made on the Bonds; and

      c.     failing and refusing to indemnify Liberty from any and all liability for losses and expenses that Liberty incurred, of whatsoever kind or nature, relating to the claims made on the Bonds.

37.     As a result of the Indemnitors' breaches of the Agreement, Liberty has suffered damages, including but not limited to the following damages, which continue to accrue, and thus Liberty's damages are continuing in nature:

      a.     payments made to satisfy the Claimants' claims and/or Air Ideal Lawsuits; and

      b.     attorneys' fees, consultants' fees, and other costs and expenses that Liberty has incurred as a result of issuing the Bonds;

38.     Liberty is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement.

WHEREFORE, Liberty demands judgment against the Indemnitors, jointly and severally, for damages, costs of this action, prejudgment interest, attorneys' fees and such further relief as this Court deems just and proper.

## COUNT II
### (Equitable Subrogation against the Indemnitors)

39.     Liberty realleges and incorporates the allegations in paragraphs 1 through 9, 18 through 30, and 32 as if fully set forth herein.

40.     Liberty was forced to pay the Claimants after Air Ideal and/or the Indemnitors failed and/or refused to do so.

41.     Air Ideal and/or the Indemnitors were primarily liable to the Claimants under the terms of their subcontracts and the Bonds.

42.     Liberty's liability to the Claimants was merely technical, secondary, and vicarious to that of Air Ideal and/or the Indemnitors, which were actively and completely at fault for the underlying liability to the Claimants.

43.     Air Ideal, as principal on the various Bonds, was required to pay the Claimants' claims.

44.     Liberty, having paid to settle the various Claimants' claims, is equitably subrogated to the Claimants' rights against Air Ideal and/or the Indemnitors.

45.     Liberty's payments to the Claimants, and any future payments to Claimants, were a result of its obligations under the Bonds and to protect its own interests, not as a volunteer.

46.     Liberty satisfied the entire amount due and owing to each claimant relating to the respective bond that Liberty issued.

9

47.    Neither the Indemnitors nor any other third-parties' rights will be harmed by Liberty's subrogation to the Claimants' rights.

48.    Liberty's damages include, but are not limited to, all sums Liberty has paid to settle the Claimants' claims and Air Ideal Lawsuit, and Liberty's costs and fees incurred to pursue this action.

WHEREFORE, Liberty demands judgment against Air Ideal for damages, court costs, prejudgment interest, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT III
### (Exoneration against the Indemnitors)

49.    Liberty realleges and incorporates the allegations in paragraphs 1 through 9, 18 through 30, and 32 as if fully set forth herein.

50.    Air Ideal has allegedly been unable and/or unwilling to satisfy its obligations on the Project to which the Bonds relate by, in part, failing to pay various Claimants.

51.    Liberty is not attempting to avoid its secondary liability to any of the Claimants for the reasonable value of labor, material, services and/or equipment they provided on the Project, to the extent the Claimants demonstrated that they are owed such monies.

52.    Instead, Liberty demands that Air Ideal be compelled to fulfill its obligations to Liberty by satisfying the Claimants' claims and indemnifying Liberty for the Air Ideal Lawsuits.

53.    Under the doctrine of exoneration, Liberty is entitled to have Air Ideal exonerate it for all amounts Liberty has paid and/or incurred as a result of issuing the Bonds, and is, therefore, entitled to an Order from this Court requiring Indemnitors to place funds or other security with Liberty, and for such further amounts as appropriate.

WHEREFORE, Liberty requests that this Court enter an Order compelling Air Ideal to exonerate Liberty by fulfilling its primary obligations to the Claimants and to place Liberty in funds

sufficient to reimburse it for the losses Liberty has already suffered.

## COUNT IV
### (Common Law Indemnity against the Indemnitors)

54.    Liberty realleges and incorporates the allegations in paragraphs 1 through 9, 18 through 30, and 32 as though fully set forth herein.

55.    Liberty is without fault for the Claimants' claims and/or the Air Ideal Lawsuits.

56.    Liberty had a special relationship with Air Ideal by virtue of issuing the Bonds.

57.    Liberty's liability under the Bonds, if any, is merely technical, secondary, and vicarious to that of Air Ideal, which is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bonds, including, without limitation, any liability to the Claimants.

58.    As a direct and proximate result of Air Ideal's failure to honor its obligations, Liberty has incurred and continues to incur damages, losses and expenses, including attorneys' fees and costs, by reason of having executed the Bonds.

59.    Air Ideal is liable to Liberty for all losses, expenses, and attorneys' fees sustained by reason of having executed the Bonds including, without limitation, all payments Liberty has made to satisfy the Claimants' claims, the Air Ideal Lawsuit, and all attorneys' fees Liberty incurs as a result of issuing the Bonds.

60.    To date, Liberty has incurred damages in the form of payments made to satisfy the Claimants' claims and/or Air Ideal Lawsuits.  Liberty has also incurred damages in the form of attorneys' fees, consultants' fees, interest, and costs, as a result of issuing the Bonds.

61.    Liberty is entitled to receive its reasonably incurred attorneys' fees pursuant to applicable Florida law.

11

WHEREFORE, Liberty requests that this Court enter judgment against Air Ideal for damages, attorneys' fees, prejudgment interest, costs, and such further relief as this Court deems just and proper.

Dated this 12th day of January, 2017.

> /s/ Ryan J. Weeks
> BRETT D. DIVERS, ESQ.
> Florida Bar No. 973246
> bdivers@mpdlegal.com
> RYAN J. WEEKS, ESQ.
> Florida Bar No. 57897
> rweeks@mpdlegal.com
> MILLS PASKERT DIVERS
> 100 N. Tampa St., Ste. 3700
> Tampa, FL 33602
> Telephone: (813) 229-3500
> Facsimile: (813) 229-3502
> *Attorneys for Plaintiff*